**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **RAI CONCRETE, INC.,** | ) | **Case No.  12-48787** |
| | ) | |
| **Debtor.** | ) | **Honorable A. Benjamin Golgar** |

**NOTICE OF FILING**

To:     See attached sheet

     YOU ARE HEREBY NOTIFIED that on this date, June 20, 2013, we have filed with the Clerk of the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, DEBTOR'S PLAN OF REORGANIZATION, a copy of which is attached hereto and herewith served upon you.

         /s/ David R. Herzog

         DAVID R. HERZOG

David R. Herzog
HERZOG & SCHWARTZ, P.C.
Attorney for the Debtor
77 West Washington, Ste. 1717
Chicago, Illinois  60602
(312) 977-1600

**CERTIFICATE OF SERVICE**

     The undersigned, an attorney, certifies that he caused to be served a copy of the foregoing instrument on the attached service list via the ECF filing system and/or regular mail on this 20th day of June, 2013.

         /s/ David R. Herzog

## SERVICE LIST

Office of the U.S. Trustee
219 S Dearborn St
Room 873
Chicago, IL 60604

Meyer Material Company
c/o Stuarat P. Krauskopf P.C.
414 N. Orleans Street, Suite 210
Chicago, IL 60654-4493

## VIA REGULAR MAIL

American Chartered Bank
Hauselman Rappin & Olswang Ltd|
39 South LaSalle Street
Suite 1105
Chicago, IL 60603-1720 12-48787

Laborer's Pension & Welfare Fund
c/o Christina Krivanek
111 W. Jackson Blvd, Suite 1415
Chicago, IL 60604-3868

Cement Mason's Local 502 Fringe
c/o Donald Schwartz
203 N. LaSalle Street, Suite 1650
Chicago, IL 60601-1257

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **RAI CONCRETE, INC.,** | ) | **Case No.  12-48787** |
| | ) | |
| Debtor. | ) | **Honorable A. Benjamin Golgar** |

## DEBTOR'S PLAN OF REORGANIZATION

RAI CONCRETE, INC. ("RAI"), Debtor and Debtor-in-Possession, proposes the following Plan of Reorganization ("Plan"), pursuant to Chapter 11 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code" or "Code"):

## ARTICLE I

## CONSTRUCTION

1.1     Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meaning ascribed thereto in the Bankruptcy Code and Rules.

1.2     Section captions used in the Plan are for convenience only, and shall not effect the construction of the Plan

1.3     The first letters of terms defined in the Plan are capitalized.

## ARTICLE II

## DEFINITIONS

For the purpose of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires):

2.1     "**Administrative Claim**" or **Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of this bankruptcy case under sections 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary costs and expenses of preserving the bankruptcy estate, (b) any indebtedness or obligations incurred or assumed by the

-1-

Debtor in the ordinary course of business during the course of this bankruptcy case, (c) any Professional Fees and Expenses, whether fixed before or after the Effective Date, (d) any fees or charges assessed against the bankruptcy estate under section 1930, Chapter 123, title 28, United States Code.

2.2 "**Allowed**" means, with reference to any Claim (including any Administrative Expense Claim), (a) any Claim against the Debtor, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, (ii)as to which no timely objection has been interposed based upon 11 U.S.C. § 502(d), (iii) as to which an objection had been interposed, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order, and (iv) which is not listed as disputed, unliquidated or contingent on the Debtor's schedules, (b) if no proof of such Claim was filed timely or was withdrawn, any Claim against the Debtor which is listed by the Debtor in its schedules, as such schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not contingent, (c) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(b) of the Bankruptcy Code, (d) any Claim allowed under or pursuant to the terms of this Plan, or (e) any Claim that has been allowed by a Final Order.

2.3 **"American Charter"** means American Charter Bank.

2.4 **"American Charter Claims"** means the Claims asserted in this case by American Charter in (1) the approximate amount of $636,026.08 which consists of two (2) separate credit facilities, to wit: (a) First Mortgage encumbering the real estate located and commonly known as 1827 Blackhawk Drive, West Chicago, IL ($436,026.08) and a business line of credit ($200,000) secured, *inter alia*, by the Debtor's receivables, accounts, inventory and equipment.

2.5      **"Bankruptcy Code"** means title 11 of the United States Code, as amended, in effect and applicable to the Debtor's bankruptcy case.

2.6      **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, having jurisdiction over this case and the matters reserved in this Plan.

2.7      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure prescribed by the Supreme Court of the United States and modified from time to time pursuant to 28 U.S.C. §2075.

2.8      **"Bar Date"** means the last day for filing proofs of claim against the Debtor as fixed by order of the Court.

2.9      **"Business Day"** means any day on which banks are open to carry on their ordinary commercial banking business in Chicago, Illinois.

2.10     **"Case"** means the Chapter 11 case of RAI CONCRETE, INC., Bankruptcy No. 12-48787 , filed December 12, 2012.

2.11     **"Cash"** means legal tender of the United States, including amounts on deposit at financial institutions in checking accounts, money market accounts and the like.

2.12     **"Cash Collateral Order"** means that Agreed Interim Order Approving Use of Cash Collateral, entered on January 9, 2013 as the same maybe amended, continued and extended from time to time.

2.13     **"Cause of Action"** or **"Causes of Action"** means all Claims, rights, actions, suits, causes of action, liens, judgments and damages belonging to the Debtor or its bankruptcy estate and any and all liabilities, obligations and debts owing to the Debtor or its bankruptcy estate, in each case whether known or unknown, in law, equity or otherwise, including, but not limited to, those causes of actions under sections 544, 548, 549, 550 and 553 of the Bankruptcy Code.

2.14    "**Claim**" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.15    "**Claimant**" means the holder of a Claim against the Debtor or the Estate.

2.16    "**Class**" means a grouping of substantially similar Claims or Interests as designated in Article V of the Plan.

2.17    "**Confirmation**" means the process undertaken by the Bankruptcy Court in accordance with section 1129 of the Bankruptcy Code to confirm a plan.

2.18    "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

2.19    "**Confirmation Order**"means the order of the Bankruptcy Court confirming this Plan, or any amendment or modification thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact or conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

2.20    "**Cure Claim**" means any Claim resulting from the Debtor's obligation to cure defaults in connection with the assumption under section 365 of the Bankruptcy Code of an executory contract or unexpired lease under Article XI of this Plan.

2.21    "**Consummation**" means completion of all Distributions to be made under the Plan.

2.22    "**Creditors**" means all entities with Claims against the Debtor or the Estate.

2.23    "**Debt**" means liability on a Claim.

2.24    "**Debtor**" means RAI CONCRETE, INC.

-4-

2.25   **"Disbursing Agent"** means the Reorganized Debtor., or such Entity as may be appointed or designated to fulfill these duties.

2.26   **"Disclosure Statement**" means the document and all exhibits, annexed thereto (together with any letters of recommendation or solicitation approved by the Bankruptcy Court) filed in connection with the Debtor's case pursuant to section 1125 of the Bankruptcy Code, and approved by the Bankruptcy Court as containing adequate information as that term is defined in section 1125(a)(1) of the Bankruptcy Code, as may be amended or modified from time to time by any duly authorized amendment or modification.

2.27   **"Disputed Claim"** means any claim (other than an Allowed Claim) which is either (a) a claim which has been scheduled by the Debtor, or (b) a claim which is the subject of a proof of claim which has been filed with the Bankruptcy Court, as to which scheduled claim the Debtor has indicated a dispute, or as to which scheduled or filed claim a timely objection to the allowance thereof has been filed by a party entitled to make such an objection, but as to which the Bankruptcy Court has not yet entered a Final Order.

2.28   **"Distribution (s) "** means the property (including payments) required by the Plan to be provided to the holders of Allowed Claims.

2.29   **"Effective Date"** means the first Business Day occurring on or after the fifteenth (15th) day after the Confirmation Date; provided, however, that if a stay of the Confirmation Order is in effect on such first Business Day, then the Effective Date shall be the first Business Day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

2.30   **"Estate"** means the bankruptcy estate created upon commencement of the Case pursuant to Section 541(a) of the Code.

2.31   **"Equity Interest"** shall refer to the 100% stock ownership of the Debtor held by Carmela Raimondi.

2.32 **"Fee Application"** means an application of a Professional under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this case.

2.33 **"Final Order"** means an order or judgment of the Bankruptcy Court, as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending, provided, however, if an appeal, or writ of certiorari, re-argument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.34 "**General Unsecured Claims**" means a Claim or Claims that is/are not an Administrative Expense Claim, Secured Claim, Priority Claim, or a Claim included in Classes 1, 2, 3, 4 or 5 of this Plan.

2.35 **"Initial Distribution Date"** means a date that is not less than ten (10) business days after the Effective Date.

2.36 **"Impaired"** shall have the meaning provided in Section 1124 of the Code.

2.37 **"Lien"** has the meaning provided by Section 101(37) of the Code.

2.38 **"RAI CONCRETE, INC.,"** means the Debtor.

2.39 **"Order of Confirmation"** means the order of the Court confirming the Plan pursuant to Section 1129 of the Code.

2.40 **"Petition Date"** means the date on which the Debtor filed its Chapter 11 petition with the Clerk of the Court, December12, 2012.

2.41    **"Plan"** means this Plan of Reorganization of the Debtor pursuant to Chapter 11 of the United States Bankruptcy Code, any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

2.42    **"Priority Claim"** means any claim entitled to priority treatment pursuant to section 507(a) of the Code, except for Administrative Claims and fees payable under 28 U.S.C. § 1930.

2.43    "**Professional**" means a person retained to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.44    "**Professional Fees and Expenses**" mean the fees and expenses incurred by a Professional rendering services for the Debtor and its estate, which fees and expenses are eligible for compensation and/or reimbursement under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

2.45    **"Property of the Estate"** has the meaning provided by Section 541 of the Code.

2.46    **"Pro Rata"** means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of Allowed Claims of the Class of which such particular Allowed Claim is included.

2.47    **"Reorganized Debtor"** means the Debtor following (1) entry of the Confirmation Order and (2) the occurrence of the Effective Date.

2.48    **"Unclaimed Property"** means any Distributions which are unclaimed ninety (90) days following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks that have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of the proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

-7-

## ARTICLE III

## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

3.1     To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the Disbursing Agent may either reserve and segregate such Distribution under the Plan as is sufficient to provide for each of such Claims under the Plan, ask the Court to determine an appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

3.2     Pursuant to Section 1123 of the Code, Article V of the Plan designates five (5) classes of Claims and Equity Interest. As set forth below, Administrative Claims of the kind specified in Sections 507(a)(1) of the Code,  have not been classified and are excluded from the classes set forth in Article V of the Plan, in accordance with Section 1123(a)(1) of the Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim  qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim or an Allowed Secured Claim in that Class. Multiple proofs of claim filed by a Creditor which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

## ARTICLE IV

## ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS

4.1     The holders of Administrative Claims entitled to priority under Section 507(a)(1) of the Code, and entities entitled to payments under Section 546(c) or 553 of the Code, and entities entitled to payment of Administrative Expense Claims pursuant to Section 503 and 507(a) of the Code shall receive on account of such Administrative Claims or Administrative Expense Claims,

cash in the amount of such Administrative Claims or Administrative Expenses Claims on or before the Effective Date of the Plan or as soon thereafter as is practicable.

4.2     Notwithstanding the foregoing, Professionals employed at the expense of the Estate, and any entities which may be entitled to an allowance of fees and expenses from the Estate pursuant to Sections 503(b)(2) through (6) of the Code, shall receive cash in the amount awarded to such Professionals and entities as soon as practicable after an order is entered by the Court approving such award pursuant to Sections 330 or 503(b)(2) through (6) of the Code, unless any such Professional or other entity consents prior to Confirmation to other treatment.

**ARTICLE V**

**<u>DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS</u>**

5.1     For purposes of all Confirmation issues, including, without limitation, voting, Confirmation and distribution, except as otherwise provided herein, all Claims and Equity Interest in the Debtor (except for Administrative Claims and Administrative Expense Claims) are classified in the following chart:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | American Charter Bank | Unimpaired |
| Class 2 | Priority Wage Claims | Impaired |
| Class 3 | Priority Pension Claims | Impaired |
| Class 4 | General Unsecured Claims | Impaired |
| Class 5 | Equity Interest | Impaired |

5.2     **<u>Class 1—American Charter Claims</u>**. Class 1 shall consist of the American Charter Claims, (1), a Claim in the approximate amount of $436,026.08 secured by a First Mortgage encumbering the real estate located and commonly known as 1827 Blackhawk Drive, West Chicago, IL and (2) a Claim in the amount of $200,000 for a business line of credit secured, *inter alia*, by the Debtor's receivables, accounts, inventory, equipment, and general intangibles. The American Charter Claims are unimpaired.

5.3    **Class 2----Priority Wage Claims**.  Class 2 shall consist of the Priority Wage Claims in the amount of $28,767.22 claimed by the Laborers' District Counsel on behalf of certain members of the Union.  The Laborers' District Counsel Claim is impaired.

5.4    **Class 3—Contributions to Employee Benefit Plan**.  Class 3 shall consist of the Priority Claim of the Laborers' Pension Fund et al., in the amount of $133,265.35.  The Laborers' Pension Fund Claim is impaired.

5.5    **Class 4—General Unsecured Claims**.  Class 4 shall consist of all General Unsecured Claims in the approximate amount of $342,029.68 which are defined to include all Claims that are not otherwise classified or described by this Plan.  The General Unsecured Claims are impaired.

5.6    **Class 5—Equity Interest**.  Class 5 shall consist of the Equity Interest in the Debtor held by the 100% shareholder, Carmela Raimondi.  The Equity Interest is impaired.

## ARTICLE VI

## TREATMENT OF UNIMPAIRED CLASSES

6.1    **Unimpaired Classes**.  Class 1 is unimpaired under the Plan.  The Holder of Claims in this class is deemed to have accepted the Plan.

6.2    **Treatment of Class 1—American Charter Claims**.  The Secured Claims of American Charter (1) in the approximate amount of $436,026.08 secured by a First Mortgage encumbering the real estate located and commonly known as 1827 Blackhawk Drive, West Chicago, IL and (2) a Claim in the amount of $200,000 for a business line of credit secured, *inter alia*, by the Debtor's receivables, accounts, inventory and equipment shall be reaffirmed and paid in accordance with the terms of the pre-petition loans documents.

## ARTICLE VII

## TREATMENT OF IMPAIRED CLASSES

7.1    **Impaired Classes**.  Classes 2, 3, 4 and 5 are impaired under the Plan.

7.2     **Treatment of Class 2—Priority Wage Claims**.  On the Initial Distribution Date, the Laborers' District Counsel, on behalf of its members  shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Priority Wage Claims, the sum of $11,725.00 in available funds.  The Laborers' District Counsel shall also release any general unsecured claims which it would otherwise hold in connection with its claim for unpaid wages.

7.3     **Treatment of Class 3—Priority Pension Claims**.  In full satisfaction, settlement, release and discharge of and in exchange for such Priority Pension Claims, the Laborers' Pension Fund shall receive payment of $66,000 with interest on the unpaid balance accruing at 2% per annum.  Payments shall commence on the 15th day of the  month, following the Effective Date of the Plan and shall be paid in equal monthly installments of One Thousand Eight Hundred Ninety and 41/00 Dollars ($1,890.41) on the 15th day of each month thereafter until paid in full.

7.3.    **Treatment of Class 4—General Unsecured Claims**.  In full satisfaction, settlement, release and discharge of and in exchange for the General Unsecured Claims, the holders of each General Unsecured Claim shall receive payment of 10% of such portion of the Claim as may be Allowed.  The Disbursing Agent shall remit these payments from the Debtor's available funds over a term running three (3) years from the Effective Date, with (1) each Allowed General Unsecured Claim to be amortized with equal quarterly payments and (2) no interest accruing thereon.  No distributions shall be made on account of a General Unsecured Claim until (1) such Claim has been Allowed, and (2) no portion of such Claim is Disputed.  In the event a General Unsecured Claim is Allowed (or its Disputed nature resolved) after distributions have been made to other holders of General Unsecured Claims, a catch-up distribution shall be made to the holder of the newly Allowed General Unsecured Claim on the next regularly scheduled distribution date.

7.4     **Treatment of Class 5—Equity Interest**.  No property or other consideration will be paid or distributed to, or retained by, the holder, Carmela Raimondi, of the 100% stock ownership of the Debtor.  The Reorganized Debtor shall issue one hundred (100) new shares of stock. The Equity Interest holder shall pay to the Reorganized Debtor the sum of Twenty-Five Dollars ($25.00)

-11-

for each new share received or a total amount of Two Thousand Five Hundred Dollars ($2,500.00)
In the event the holder of the Equity Interest does not elect to purchase shares of the Reorganized
Debtor on the Effective Date, the shares not so purchased will be offered at public auction upon (a)
entry of the Confirmation Order and (b) the Confirmation Order becoming a Final Order.  The
Bankruptcy Court shall schedule an auction with respect to any shares not purchased by the holder
of the Equity Interest.  The auction shall be advertised for two weeks in the Chicago Tribune and
the Chicago Daily Law Bulletin, with the form and sufficiency of the notice to be approved by the
Bankruptcy Court.

### ARTICLE VIII

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT
### OF REJECTION BY ONE OR MORE CLASSES OR
### EQUITY INTEREST; CRAMDOWN

8.1     **Classes Entitled to Vote**.  Except as provided in ¶ 8.3 below, each impaired class
of Claims and Equity Interest that will receive distributions under the Plan shall be entitled to vote
separately to accept or reject the Plan.  Classes 2, 3 and 4 are impaired and entitled to vote.

8.2     **Deemed Acceptance without Vote**.  Any unimpaired class of Claims or Equity
Interest shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject
the Plan.  Classes 1 is unimpaired, and is not entitled to vote.

8.3     **Deemed Rejection without Vote**.  Any impaired class of Claims or Equity Interest
which will not receive a distribution under this Plan shall be deemed to have rejected the Plan and
shall not be entitled to vote to accept or reject the Plan. Class 5 is deemed to have rejected the Plan.

8.4     **Class Acceptance Requirement**.  An impaired class of Claims shall have accepted
the Plan if accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number
of the Allowed Claims in such class that have voted on the Plan.

8.5     **Cramdown**. Notwithstanding the rejection or deemed rejection of the Plan by any
class of Claims or Equity Interests, the Debtor hereby requests that the Bankruptcy Court confirm
the Plan in accordance with section 1129(b) of the Bankruptcy Code.

# ARTICLE IX

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

9.1    **Funding the Plan—Payment of Administrative Claims and Expenses**. Distributions in cash shall be made to Allowed Administrative Claims and Administrative Expense Claims on the Effective Date of the Plan to satisfy such claims in full. The Funds required for the payment of these claims shall be realized from Debtor's funds in its Debtor in Possession Account as well as from the sale of the Reorganized Debtor's shares of stock.

9.2    **Funding the Plan—Payment of Class 1**.  Upon the Effective Date of the Plan, the Reorganized Debtor shall take all necessary steps to reaffirm its existing loans and security agreements with American Charter, which includes the loan  secured by a first mortgage on the property commonly known as 1827 Blackhawk Drive, West Chicago, IL  and a line of credit secured by a UCC security interest in all of the Reorganized Debtor's accounts, accounts receivable, inventory, equipment and general intangibles

9.3    **Funding the Plan—Payment of Class 2, 3 and 4**.  The Reorganized Debtor's future earnings from the operation of its business, shall be used to pay Class 2,  3 and 4 Allowed Claims in accordance with the terms of payment provided herein.

9.4    **Operation of Business and Management of Assets After Effective Date**.  Except as otherwise specifically set forth in the Plan, as of the Effective Date, the Reorganized Debtor may operate the business of the Reorganized Debtor, and may use, acquire and dispose of any property, assets or rights free of any restrictions imposed by the Bankruptcy Code.

9.5    **Disbursements**. The Reorganized Debtor shall act as Disbursing Agent and shall make all Distributions in accordance with the Plan. To make the Distributions under the Plan, the Reorganized Debtor, as Disbursing Agent, shall distribute all property and payments called for by the Plan.

-13-

9.6    **Reserve for Disputed Claims**. On and after the Effective Date, the Distributions reserved for the holders of Disputed Claims shall not be distributed but shall be held by the Reorganized Debtor in a segregated account (the "Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under Section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claim Reserve an amount of cash which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holder thereof.

9.7    **Resolution of Disputed Claim**.  At such time as a Disputed Claim becomes an Allowed Claim, the Distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the Disbursing Agent for delivery to the holder of such Allowed Claim within thirty (30) days. At such time as all Disputed Claims have been finally determined, the balance of the Disputed Claim Reserve not theretofore distributed shall be returned to the Reorganized Debtor.

9.8    **Unclaimed Distributions**. The Reorganized Debtor shall deposit any Unclaimed Distributions into an undivided Property Reserve to be held in trust for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of one hundred eighty (180) days following the date of distribution, Unclaimed Property, including any principal, interest and dividends, in cash or in kind, as may have been paid on account of any such Unclaimed Property shall be held in the Unclaimed Property Reserve solely for the benefit of the holders of Allowed Claims which have failed to claim such property. Until the expiration of one hundred eighty (180) days following the distribution date, Unclaimed Property due to the holder of an Allowed Claim shall be released from the Unclaimed Property Reserve and delivered to such holder upon presentation of proper proof of such holder to its entitlement thereto. At the end of one hundred eighty (180) days following the distribution date, the holder of Allowed Claims theretofore entitled

-14-

to Unclaimed Property shall cease to be entitled thereto, and the Unclaimed Property shall then become the property of the Reorganized Debtor.

9.9 **Execution and Delivery of Documents**. The Debtor and Reorganized Debtor are authorized to execute and deliver documents and instruments as are necessary or appropriate to promote and implement Consummation of the Plan or to carry out the purposes of the Plan.

9.10 **Objections to Claims and Interests**. Any objection to any Claim or Interest shall be filed on or before thirty (30) days after the Effective Date. This time period can be extended by the Court upon request of the Debtor or the Reorganized Debtor.

9.11 **Bar Date**. The last day for filing proofs of claims against the Debtor shall be the Bar Date fixed by the Court prior to Confirmation of the Plan, except for Administrative Claims. The deadline for filing Administrative Claims, including Claims for compensation and reimbursement of professional persons employed pursuant to Court order in the Case, will be fixed by the Court.

9.12 **Retention and Enforcement of Claims**. Pursuant to Section 1123(b)(3) of the Code, the Reorganized Debtor may maintain and enforce any Claims of the Debtor or the Estate.

9.13 **Court and United States Trustee Fees**. Prior to the Effective Date, all fees due from the Debtor to the Clerk of the Court and all fees due from the Debtor to the United States Trustee shall be paid in full.

9.14 **Post-Confirmation Reports and Fees**. The Reorganized Debtor shall be responsible for the filing of all post-Confirmation reports required during such period with the U.S. Trustee and the payment of all Post-Confirmation fees charged or assessed against the bankruptcy estate under 28 U.S.C. § 1930.

9.15 **No Interest to Accrue on Unsecured Claims**. No post-petition interest shall accrue or be payable on any General Unsecured Claim against the Debtor. Interest shall only accrue on Secured Claims and Priority Pension Claims against the Debtor to the extent provided and Allowed under applicable law.

9.16    **Vesting of Assets**. Pursuant to the provisions of sections 1141(b) and 1141(c) of the Bankruptcy Code, all of the Debtor's assets, including but not limited to all of the property of this bankruptcy estate pursuant to section 541 of the Bankruptcy Code, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims and Equity Interests, except as otherwise provided in the Plan.

9.17    **Release of Preference Actions**. Upon the Effective Date, and conditioned upon the acceptance of the Plan by Class 4 hereunder, all of the Debtor's Claims and Causes of Action under 11 U.S.C. §§ 547 shall be released and extinguished.

9.18    **Preservation of Debtor's Causes of Action**. Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan: (a) the Debtor shall exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or its estate may hold against any person or entity; (b) accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such reserved and preserved Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan; and (c) the Reorganized Debtor exclusively may pursue such reserved and preserved Claims, Causes of Action, demands and rights in the Debtor's name as appropriate, in accordance with the Debtor's best interests.

9.19    **Setoffs**. Except as otherwise provided for herein, the Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claim(s) of any nature whatsoever the Debtor or its estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder

-16-

shall constitute a waiver or release by the Debtor or its estate of any claim it may have against such holder.  Likewise, the Debtor shall reserve and preserve all of its rights of recoupment to the fullest extent possible.

## ARTICLE X

### POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF PROFESSIONAL

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing or order of the Court, such attorneys, accountants and other professionals as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by professional persons employed by the Reorganized Debtor after the Confirmation Date, the Reorganized Debtor shall be authorized to pay for such service, related costs and expenses without notice, hearing or order of the Court; provided however, that with respect to fees, costs and expenses of such professional persons for services rendered after the Confirmation Date in or in connection with the Case, or in connection with the Plan and incident to the Case, in the event the Reorganized Debtor disputes the reasonableness of any such fees, costs or expenses, the Reorganized Debtor shall pay such professional person only the undisputed amount, if any, and file an application with the Court to determine the reasonableness of the fees, costs or expenses which are in dispute.

## ARTICLE XI

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date and not rejected pursuant to Section 365 of the Bankruptcy Code prior to the Confirmation Date, shall be deemed assumed upon the Confirmation Date.

## ARTICLE XII

### RETENTION OFJURISDICTION BY THE BANKRUPTCY COURT

12.1    From the Confirmation date until entry of a final decree closing the Debtor's bankruptcy case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy Court

shall retain such jurisdiction as is legally permissible over this case (and all contested matters and adversary proceedings arising therein or relating thereto) for the following purposes:

(a)      to hear and determine (i) any and all objections to the allowance of any Claim or Administrative Claim, (li) any controversy as to the validity, priority, or classification of any Claim or Administrative Claim, or (iii) any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any creditors, holders of Claims or other parties in interest;

(b)      to hear and determine any and all applications for compensation and reimbursement of expenses by professionals employed for the benefit of the bankruptcy estate;

(c)      to hear and determine (i) any and all pending motions for the assumption, rejection and/or assignment of executory contracts and unexpired leases, (ii) any disputes relating thereto or arising therefrom and (iii) to determine the amount and treatment of any claims arising therefrom;

(d)      to adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Bankruptcy Court, including, but not limited to, Claims and Causes of Action belonging to the Debtor and actions relating to taxes brought by the Reorganized Debtor;

(e)      to enforce and interpret the provisions of this Plan and the Confirmation Order;

(f)      to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders as may be required to enforce any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(g)      to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(h)    to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan;

(i)    to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(j)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated; and

(k)    to enter an order concluding and terminating this case.

## ARTICLE XIII

## MODIFICATION AND WITHDRAWAL OF PLAN

13.1    **Modification of Plan.**  The Debtor may propose modifications to this Plan at any time before Confirmation, provided that die Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and that the Debtor has complied with the section 1125 of the Bankruptcy Code (to the extent applicable to such modifications). The Debtor may propose modifications to this Plan at any time after Confirmation and before its substantial consummation; provided, however, that (i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (ii) the Bankruptcy Court determines, after notice and a hearing, that (A) the Plan, as modified complies with section 1129 of the Bankruptcy Code and (B) the circumstances warrant such modification.

13.2    **Withdrawal of Plan.** The Debtor reserves the right to withdraw and/or revoke the Plan at anytime prior to the entry of the Confirmation Order. If the Debtor withdraws and/or revokes the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void In that event, nothing contained shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor, or any other person, (b) to prejudice in any manner the rights of the Debtor, or any other person, or (c) to constitute an admission by the Debtor any other person.

## ARTICLE XVI

-19-

## MISCELLANEOUS PROVISIONS

14.1    **Headings**. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

14.2    **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Illinois applicable to contracts executed in such State by residents thereof and to be performed entirely within such State will govern the construction and implementation of this Plan, and any agreements, documents, and instruments executed in connection with this Plan.

14.3    **Binding Effect**  As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, the holders of Claims, the holders of Equity Interests and their respective successors and assigns.

14.4    **Notices**. All notices to the Debtor in connection with the Plan shall be in writing, and shall be deemed received upon actual delivery by messenger, facsimile, e-mail or delivery by a national overnight courier to the following address:

> David R. Herzog
> HERZOG & SCHWARTZ PC.
> 77 W. Washington St. #1717
> Chicago, Illinois 60602
> Telephone: (312) 977-1600
> Facsimile: (312) 977-9936
> E-mail: drhlaw@mindspring.com

14.5    **Successors and Assigns**.  The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Entity.

14.6    **Severability**. Wherever possible, each provision of the Plan shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any provision of the Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Plan. Confirmation of the Plan shall constitute a determination by the

Bankruptcy Court that there is no provision contained therein that is prohibited or invalid under applicable law. Furthermore, if the Bankruptcy Court will not confirm the Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Debtor may seek permission of the Bankruptcy Court to amend the Plan by deleting or modifying the offending provision.

Dated:          June 20, 2013
                Chicago, Illinois

                              Respectfully submitted,

                              RAI INTERNATIONAL, INC.

                              By:_____/s/ David R. Herzog_____
                                          One of Its Attorneys

David R. Herzog (# 1203681)
HERZOG & SCHWARTZ PC.
Attorneys for the Debtor
77 W. Washington St. #1717
Chicago, Illinois 60602
Telephone: (312) 977-1600
Facsimile: (312) 977-9936
drhlaw@mindspring.com
Attorneys for the Debtor